IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| VYRIAN INC.<br>*Plaintiff*, | § § § § § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-03886 |
| ABDUL TAYYEB DATARWALA,<br>HUSAIN DATARWALA, AND<br>AMATULLAH ALIBHAI<br>*Defendants*. | § § § § § | |

**DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(b)(3) OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY LITIGATION**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Abdul Tayyeb Datarwala and Amatullah Alibhai (collectively, "Defendants") and file this their MOTION TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(b)(3), OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY LITIGATION pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–4, and would respectfully show the Court as follows:

### I.   FACTUAL BACKGROUND AND STATEMENT OF ISSUES

1. Defendants Alibhai and Abdul Tayyeb Datarwala are married to one another, and they are also former employees of Plaintiff Vyrian, Inc. Defendant Alibhai held the role of project manager before her layoff by Plaintiff. Defendant Abdul Tayyeb Datarwala served in a number of roles from intern rising up to Vice President of Operations and Global Trading, at the time of his termination in 2025.

**DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO STAY LITIGATION AND COMPEL ARBITRATION**

2. Plaintiff and Defendants are now engaged in this federal action. Plaintiff filed its Original Complaint in the Southern District of Texas on August 15, and filed its First Amended Complaint on October 1, 2025. *See* Ex. 3 (First Amended Complaint).

3. In its amended pleadings, Plaintiff asserts a federal RICO claim in addition to a federal CFAA claim (and conspiracy) and Texas-law claims including fraud, breach of fiduciary duty, breach of contract, and civil conspiracy, all arising from the parties' business and employment relationship and related dealings. *See* Ex. 3.

4. Despite the First Amended Complaint's revised narrative of some facts (from the original complaint) and the addition of a civil RICO count, the controversy as to Defendants Datarwala and Alibhai **remains an employment related dispute** governed by the NDAs (including the arbitration provisions in said NDAs). At this stage of the pleadings and given the procedural posture of this Motion, Defendants have not yet answered regarding their counterclaims and additional improper conduct of Plaintiff as their former employer, but they will do so once this motion is decided by the Court.

5. Plaintiff's allegations against these Defendants squarely arise from or relate to their employment, the confidentiality and proprietary information obligations set forth in the NDAs, the vendor oversight and invoicing processes performed during that employment, and the termination of that relationship. Under Section VII, disputes concerning those subjects must be resolved solely by binding AAA arbitration in Harris County, Texas. *See* Exs. 1 and 2 § VII; Ex. 3. This lawsuit squarely arises from the employment of Defendants by Vyrian, Inc., and claims related to the employment relationship of the Defendants (and termination of Defendants' employment by Plaintiff).

6. On June 3, 2019, Vyrian, Inc. and Abdul Tayyeb Datarwala, executed a Non-Disclosure and Confidentiality Agreement (the "Datarwala NDA"). *See* Ex. 1 (Datarwala NDA).

7. On January 27, 2022, Vyrian, Inc. and Amatullah Alibhai, executed a Non-Disclosure and Confidentiality Agreement (the "Alibhai NDA"). *See* Ex. 2 (Alibhai NDA). The Alibhai NDA is substantially similar to the Datarwala NDA, in particular as to the binding arbitration provision.

8. On the same date, both Vyrian, Inc. and Amatullah Alibhai also executed a separate employment agreement, which also included a binding arbitration provision. *See* Ex. 4 (Alibhai Employment Agreement).

9. On February 24, 2025, Vyrian terminated Abdul Tayyeb Datarwala's employment regarding its ongoing investigation of the matters that form the basis of their lawsuit, via email correspondence ("Datarwala Termination Letter"). In particular, Vyrian incorporated the Datarwala NDA in said termination letter, including the operative arbitration provision as briefed in the instant Motion. *See* Ex. 5 (Datarwala Termination Letter).

10. Earlier on July 24, 2024, Vyrian terminated Amatullah Alibhai's employment due to a layoff ("Alibhai Termination Letter"). The Alibhai Termination Letter also references the confidentiality obligations of Alibhai (which are presumably set out in the Alibhai NDA). *See* Ex. 6 (Alibhai Termination Letter).

11. In Section VII of both NDAs, Plaintiff and Defendants each clearly agreed to binding arbitration for all employment claims. Defendant Alibhai and Plaintiff also separately agreed to arbitration in her employment agreement

12. Further upon termination, Defendant Datarwala received a termination letter that expressly incorporated by reference his NDA. Defendant Alibhai received a termination letter that noted her ongoing confidentiality obligations (but did not expressly refefence her NDA).

13. Section VII (Governing Law and Venue) of the NDA contains a broad and mandatory arbitration clause under which disputes "arising in any way out of this agreement, the employment relationship, or the termination of the employment relationship" shall be resolved solely through binding arbitration in accordance with the then-current rules of the American Arbitration Association; the clause also extends to "any and all claims against any officers, directors, agents, and employees of Vyrian" that relate to those subjects. See Exs. 1, 2, § VII.

14. A copy of the arbitration provision in the Datarwala NDA (Exhibit 1) is pasted below:

> **VII. GOVERNING LAW AND VENUE**
>
> The validity, interpretation, construction, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, where Vyrian is headquartered. This governing law provision is essential to provide uniformity in the interpretation of Vyrian's agreements on this subject matter. Venue for any legal action commenced to enforce this Agreement shall be in the Superior Court of Fort Bend County, Texas, and both parties agree to personal jurisdiction before that Court.
>
> In the event of a dispute arising in any way out of this agreement, the employment relationship, or the termination of the employment relationship— the parties agree to resolve their dispute solely through binding arbitration in accordance with the then current rules of the American Arbitration Association. This provision applies to any and all claims against any officers, directors, agents, and employees of Vyrian, which in any way relate to this agreement, the employment relationship or the termination of the employment relationship.
>
> In the event of a dispute arising in any way out of this agreement, the employment relationship, or the termination of the employment relationship— the parties agree to resolve their dispute solely through binding arbitration in accordance with the then current rules of the American Arbitration Association. This provision applies to any and all claims against any officers, directors, agents, and employees of Vyrian, which in any way relate to this agreement, the employment relationship or the termination of the employment relationship.

15. A copy of the arbitration provision in the Alibhai NDA (Exhibit 2) is pasted below:

> **VII. GOVERNING LAW AND VENUE**
>
> The validity, interpretation, construction, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, where Vyrian is headquartered. This governing law provision is essential to provide uniformity in the interpretation of Vyrian's agreements on this subject matter. Venue for any legal action commenced to enforce this Agreement shall be in the Superior Court of Fort Bend County, Texas, and both parties agree to personal jurisdiction before that Court.
>
> In the event of a dispute arising in any way out of this agreement, the employment relationship, or the termination of the employment relationship— the parties agree to resolve their dispute solely through binding arbitration in accordance with the then current rules of the American Arbitration Association. This provision applies to any and all claims against any officers, directors, agents, and employees of Vyrian, which in any way relate to this agreement, the employment relationship or the termination of the employment relationship.

16. A copy of the arbitration provision in the Alibhai employment agreement (Exhibit 3) is also pasted below:

> **Arbitration**
>
> In the event of a dispute arising in any way out of this agreement, the employment relationship, or the termination of the employment relationship— the parties agree to resolve their dispute solely through binding arbitration in accordance with the then current rules of the American Arbitration Association. This provision applies to any and all claims against any officers, directors, agents, and employees of the employer, which in any way relate to this agreement, the employment relationship or the termination of the employment relationship.

17. The same Section VII of the NDAs includes venue/jurisdiction language referring to the Texas courts for legal actions to enforce the agreement (it refers ambiguously to the "Superior Court of Ft. Bend County, Texas"), but then clearly points to binding arbitration by the then-current rules of the AAA. Those sentences do not create any carve-out that would permit litigation in court of the merits of Plaintiff's claims; there is no carve-out in either NDA that allows these claims to proceed in court rather than arbitration. *See* Exs. 1, 2, § VII..

18. The NDAs contain an amendment and waiver provision stating that the agreements may not be amended, modified, superseded, or cancelled, and that no term or covenant may be waived except by a written instrument executed by (i) the Employee and Vyrian's Chief Executive Officer or a Director of the Company. *See* Ex. 1 and Ex. 2 (Preamble Section), respectively. If

no such writing exists in the parties' records, then no written waiver of the arbitration provision has been executed. In the case of both NDAs, this provision holds as follows:

> This Agreement and Employee/Contractor's obligations hereunder shall not be altered in any way by a change in Employee/Contractor's position, title or responsibilities, and may not be amended, modified, superseded or cancelled. None of the terms or covenants in this Agreement may be waived, except by a written instrument duly executed by the Employee/Contractor and Vyrian's Chief Executive Officer or a Director of the Company.

19. Each NDA includes a governing-law clause providing that the agreement shall be governed by and construed in accordance with the laws of the State of Texas. *See* Exs. 1, 2, § VII.

20. Notwithstanding these binding agreements to arbitrate, Plaintiff commenced this federal action and seeks to litigate claims arising from the parties' agreement and employment relationship. Those subjects are addressed in Section VII of each NDA.

21. The issues before the Court are: (i) whether valid written agreements to arbitrate exist between Plaintiff and each Defendant under the NDAs; (ii) whether Plaintiff's claims fall within the scope of the NDAs' arbitration provisions; and (iii) whether Plaintiff can establish a contractual defense that would render those provisions unenforceable.

22. If the Court determines that arbitration is required, the appropriate relief is dismissal under Rule 12(b)(3) for improper venue, or, in the alternative, an order compelling arbitration and staying this action pursuant to 9 U.S.C. § 3 pending completion of the arbitration.

23. Defendants note that the Fifth Circuit has not definitively resolved whether dismissal is proper under Rule 12(b)(3) for improper venue when an arbitration agreement requires disputes to be resolved in another forum, or whether such motions are more appropriately brought under Rule 12(b)(6) for failure to state a claim, as several other circuits have held. Although some courts have also framed the issue under Rule 12(b)(1), the prevailing view is that arbitration does not deprive the Court of subject-matter jurisdiction. Accordingly, Defendants respectfully move

for dismissal pursuant to Rule 12(b)(3), or alternatively under Rule 12(b)(6), or such other provision as the Court deems proper.

## II. ARGUMENT AND AUTHORITIES

### A. Arbitrability Analysis

24. Federal courts determine whether a written agreement to arbitrate exists and whether any of the issues raised are within the reach of that agreement. *See Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006*); see also Kubala v. Supreme Prod. Servs., Inc.,* 830 F.3d 199, 201–02 (5th Cir. 2016). This analysis applies under Texas law, which uses ordinary contract principles to decide formation and scope. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).

25. Valid agreements to arbitrate exist in the present dispute. On June 3, 2019, Plaintiff and each Defendant executed NDAs that require the parties to resolve any dispute arising in any way out of the agreement, the employment relationship, or the termination of that relationship solely through binding arbitration in accordance with the then current rules of the American Arbitration Association. *See* Exs. 1 and 2 § VII. These written provisions fall squarely within the Federal Arbitration Act. *See* 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

26. The analysis is the same under the Federal Arbitration Act and the Texas Arbitration Act. First, a party seeking to compel arbitration must establish the existence of a valid arbitration agreement. Second, the movant must show that the claims asserted fall within the scope of that agreement. If the movant satisfies these two steps, a presumption of arbitrability arises and the burden shifts to the party resisting arbitration to demonstrate a valid contract defense to enforcement. *See Tittle v. Enron Corp*., 463 F.3d 410, 418–19 (5th Cir. 2006*); Kubala v.*

*Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

27. Here, the pleaded claims fall entirely within the NDAs' broad scope. *See* Exs. 1 and 2. Each NDA requires arbitration of any dispute arising in any way out of the agreement or the employment relationship, and the Fifth Circuit construes "arise out of" or "relate to" language broadly to include contract, tort, and statutory claims that touch matters covered by the agreement. *Id.* Any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Federal statutory claims, including civil RICO claims, are arbitrable when the parties have agreed to arbitrate them. *See Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 238, 242 (1987) (placing the burden on the party opposing arbitration to show a contrary congressional command and holding civil RICO claims arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985).

28. Once a valid agreement and in-scope claims are shown, the party opposed to arbitration must carry its burden to prove a contract defense directed to the arbitration clause itself. Challenges to the contract as a whole are for the arbitrator under the severability doctrine. *See FirstMerit*, 52 S.W.3d at 753–54; *Oakwood*, 987 S.W.2d at 573; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010).

29. To the extent gateway issues of arbitrability are presented, incorporation of the American Arbitration Association rules within the NDAs constitutes clear and unmistakable evidence that the parties agreed that the arbitrator will decide issues such as scope and enforceability. Courts must honor a valid delegation. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–31 (2019).

30. The venue and jurisdiction sentences in Section VII do not create a carveout from arbitration. Read together with the parties' agreement to resolve disputes solely through binding AAA arbitration, those sentences do not narrow the arbitrable issues and do not displace the exclusive arbitral forum clearly set by the NDAs. To the extent any ambiguity could be perceived, the Federal Arbitration Act requires that doubts be resolved in favor of arbitration. *See* Exs. 1 and 2 § VII; *see also Moses H. Cone*, 460 U.S. at 24–25.

31. The Federal Arbitration Act requires enforcement of arbitration agreements even if arbitration proceeds while other issues remain in court, and courts must compel arbitration as agreed. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985). Defendants have satisfied the governing framework, and Plaintiff has not identified a contract defense directed at the arbitration provisions. Accordingly, this Court should enforce the NDAs and refer the parties to arbitration.

### B. Presumptions in Favor of Arbitration

32. Arbitration of disputes is strongly favored under both federal and state law, *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 898-99 (Tex. 1995). Texas law has historically favored agreements to resolve disputes by arbitration. *Id; In re Poly-America, L.P.,* 262 S.W.3d 337, 348 (Tex. 2008); see also *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 782-83 (Tex.

2006) (recognizing presumption favoring arbitration clauses). This public and judicial policy is reflected in the presumptions in favor of arbitration applied to the second (scope) and third (defenses) steps of arbitrability analysis.

**(a) (Scope of Agreement)** <u>Courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration.</u> *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). A broad arbitration clause, purporting to cover all claims, disputes and other matters or relating in any way to the contract, creates a presumption of arbitrability. The presumption of arbitrability is "particularly applicable" for broadly worded agreements, such as the one in issue here, "[i]n such cases, '[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584–85 (1960)). Here, Section VII of each NDA requires the parties to resolve any dispute arising in any way out of the agreement, the employment relationship, or the termination of that relationship solely through binding AAA arbitration, and it contains no express exclusion that applies to Plaintiff's pleaded claims. *See* Exs. 1 and 2 § VII. Plaintiff's claims, including the alleged CFAA violation and conspiracy and the Texas-law claims for fraud, breach of fiduciary duty, breach of contract, and civil conspiracy, arise from or relate to the parties' employment relationship and the subject matter of the NDAs and are therefore presumptively arbitrable. *See* Exs. 1 and 2 § VII.

**(b) (Defenses Against Agreement)** Under both state and federal law, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration, whether

pertaining to the construction of the contract or a defense to arbitration. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, <u>whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.</u>" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

### C. The Arbitration Agreements Are Valid and Enforceable

33. The arbitration clauses in the NDAs are sufficient to meet the burden of the first two steps of the arbitrability analysis in this case. Arbitration agreements are interpreted under traditional contract principles. Disputes regarding the interpretation of an arbitration agreement are analyzed under traditional principles of contract construction.

34. In deciding whether the agreement to arbitrate exists, federal courts do not consider general challenges to the validity of the entire contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). An arbitration agreement is severable from the underlying contract under Section Two of the Federal Arbitration Act. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). As a result, a "party's challenge . . . to the contract as a whole . . . does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

### D. The FAA Applies to All Agreements (and Will Preempt State Arbitration Law)

35. The validity of an arbitration agreement is determined by reference to general principles of contract law. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally"). However, to the extent that state law carves out special rules for arbitration agreements that do not apply generally to all contracts, it is inconsonant with, and is therefore preempted by, the federal FAA.

36. The Federal Arbitration Act ("FAA") applies to an arbitration agreement, "unless language in the arbitration agreement indicates its exclusion." *In re Olshan Found. Repair Co.,* 328 S.W.3d 883, 890 (Tex. 2010). Accordingly, the FAA will also apply to arbitration under this agreement. For purposes of the underlying NDAs, the FAA expressly governs arbitration under both agreements.

37. The Texas Arbitration Act, Tex. Civ. Prac. & Rem. Code ch. 171, also supports enforcement where it applies, and Texas courts routinely compel arbitration under either the FAA or the TAA. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780–81 (Tex. 2006); *Rachal v. Reitz*, 403 S.W.3d 840, 845–46 (Tex. 2013). If both statutes apply and there is a conflict, the FAA controls to the extent of the conflict. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008).

38. The NDAs select Texas law in Section VII and do not mention or exclude either the FAA or the TAA. Because the NDAs evidence transactions involving commerce and contain no language opting out of the FAA, the FAA governs enforcement, with the TAA providing parallel support where not in conflict.

### E. Arbitration is Mandated Under Both the FAA and TAA

39. The FAA provides that:

> "If any suit or proceeding be brought in any of the courts…upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3. When the factual allegations in the complaint on their face establish that the asserted claims fall within the scope of an arbitration agreement, a trial court abuses its

discretion by declining to compel arbitration of the claims and stay the trial court proceedings. *Id.* A stay is mandatory upon request once issues are referable to arbitration. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 144 S. Ct. 1173, 1177–79 (2024).

40. The Texas Arbitration Act similarly provides that, on a motion to compel arbitration, a court "shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate." Tex. Civ. Prac. & Rem. Code § 171.021(a). The TAA also authorizes a stay of litigation pending arbitration. *Id.* § 171.025. Texas courts routinely enforce arbitration under either the FAA or the TAA, and to the extent of any conflict, the FAA controls. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 352 (Tex. 2008).

41. In determining whether to compel arbitration, the court bears in mind that an agreement to arbitrate is a matter of contract, and arbitration is a way to resolve those disputes, and only those disputes, that the parties have agreed to submit to arbitration. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016).

42. The arbitration provisions in the NDAs clearly apply to Plaintiff's claims, including the newly pleaded RICO count, under a plain reading of Section VII and the allegations in the complaint. *See* Exs. 1 and 2 § VII. Plaintiff has refused to arbitrate by filing and maintaining this action in court.

### III. MOTION TO DISMISS FOR IMPROPER VENUE IS WARRANTED

43. Venue is improper because the parties agreed that disputes "arising in any way out of" the NDAs or the employment relationship would be resolved solely by binding arbitration

administered by the American Arbitration Association in Harris County, Texas. See Exs. 1 and 2 § VII. Having selected arbitration as the exclusive forum, Plaintiff may not litigate these claims in this Court; dismissal under Rule 12(b)(3) is warranted.

44. The Fifth Circuit applies a strong presumption in favor of arbitration, and the party opposing enforcement bears the burden to show invalidity or inapplicability of the clause. *See Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005).

45. Within the Fifth Circuit, arbitration provisions are enforced through Rule 12(b)(3) as a species of forum-selection clause when the parties have committed disputes to a specified arbitral forum. *See id.* (treating arbitration agreement as a forum-selection mechanism and affirming dismissal for improper venue).

46. As the Supreme Court has made clear, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

47. The Supreme Court has reiterated this principle: arbitration/forum-selection provisions are presumptively enforceable and should be honored according to their terms. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534 (1995).

48. Consistent with this authority, courts in this District routinely resolve venue objections based on arbitration under Rule 12(b)(3*). See Lim*, 404 F.3d at 902; *Kessman & Assocs., Inc. v. Barton-Aschman Assocs., Inc.*, 10 F. Supp. 2d 682, 689 n.15 (S.D. Tex. 1997).

49. Accordingly, the Court should dismiss this action for improper venue. In the alternative, as set out in the next section, the Court should compel arbitration and stay this case pursuant to 9 U.S.C. § 3.

## IV.   IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION AND STAY LITIGATION IS APPROPRIATE

50. If the Court does not dismiss this action for improper venue, then it should compel Plaintiff's claims against Defendants to arbitration and stay this litigation as the only proper means of adjudicating those claims. Continued litigation in this Court is not appropriate given the parties' clear and express agreements in the NDAs to resolve covered disputes solely through binding arbitration.

51. Plaintiff's claims clearly arise out of or relate to the NDAs and the employment relationship addressed therein and therefore fall within the scope of the arbitration provisions in Section VII of each NDA. Accordingly, arbitration is required under the Federal Arbitration Act and, where applicable, the Texas Arbitration Act.

52. A court must stay litigation of any issue referable to arbitration under a written agreement upon application of a party that is not in default in proceeding with arbitration. 9 U.S.C. § 3. Defendants have timely invoked arbitration and are not in default.

53. Defendants therefore request a stay under 9 U.S.C. § 3. In the alternative, a discretionary stay is appropriate under the Court's inherent authority to control its docket. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009). A stay is mandatory upon request once issues are referable to arbitration. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 144 S. Ct. 1173, 1177–79 (2024).

## V.  RELIEF REQUESTED

54. Defendants respectfully request that the Court dismiss this action for improper venue under Rule 12(b)(3). In the alternative, Defendants request an order compelling arbitration of all of

Plaintiff's claims against Defendants and staying this action pending completion of arbitration pursuant to 9 U.S.C. § 3, together with such other and further relief to which Defendants are justly entitled.

## VI. **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants pray:

(1) that the Court dismisses this action for improper venue under Rule 12(b)(3) or in the alternative:

(2) that the Court order the parties to arbitrate this dispute in accordance with Section VII of the NDAs;

(3) that the Court stay these proceedings pending issuance of a final arbitration award pursuant to 9 U.S.C. § 3;

(4) that the Court enter such orders as may be necessary to enforce any arbitration award; and

(5) for such other and further relief to which Defendants may be justly entitled.

Date: October 10, 2025

Respectfully submitted,

**EDWARDS SUTARWALLA SAMANI LLP**

/s/ M.F. Sutarwalla

Murtaza F. Sutarwalla
State Bar No. 24056398

**DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO STAY LITIGATION AND COMPEL ARBITRATION**

Fed. Id. No. 2589991
**Attorney in Charge**

**Of Counsel**
George Edwards III
State Bar No. 24055438
Fed. Id. No. 1031248
Zeshaan Samani
State Bar No. 24083783
Fed. Id. No. 3908130
Nadine Alkiswany
State Bar No. 24128589
Fed. Id. No. 3894475

602 Sawyer St., Suite 490
Houston, Texas 77007
Office: 713-565-1353
Fax :713-583-8715
Email: murtaza@esslawpartners.com
Email: george@esslawpartners.com
Email: zeshaan@esslawpartners.com
Email: nadine@esslawpartners.com

**ATTORNEYS FOR DEFENDANTS ABDUL TAYYEB DATARWALA AND AMATULLAH ALIBHAI**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion was served on the attorney in charge for all parties by electronic service pursuant to the Federal Rules of Civil Procedure, on this, the 10th day of October 2025:

/s/ M.F. Sutarwalla
_____
Murtaza F. Sutarwalla

## CERTIFICATE OF CONFERENCE

Undersigned counsel certifies that counsel for Defendants Abdul Tayyeb Datarwala and Amatullah Alibhai conferred with counsel for Plaintiff Vyrian, Inc. regarding the relief requested in this motion. Despite good-faith efforts, the parties were unable to reach agreement, and Plaintiff does not consent to the requested relief. Accordingly, this motion is submitted to the Court for determination.

/s/ M.F. Sutarwalla
_____
Murtaza F. Sutarwalla

**DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO STAY LITIGATION AND COMPEL ARBITRATION**